NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

REGINALD LEACH,

          Petitioner,   :   Civil Action No. 12-7605 (DRD)

v.   :   **O P I N I O N**

BEVERLY HASTINGS et al.,

          Respondents.

**Debevoise**, District Judge:

Petitioner Reginald Leach ("Petitioner") filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254(a), challenging a judgment of conviction entered by the Superior Court of New Jersey. See Docket Entries Nos. 1 (the petition) and 2 (accompanying brief). The Court, therefore, is obligated to advise Petitioner of his rights under Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), and allow him an opportunity to submit his all-inclusive § 2254 application.[1]

According to the Superior Court of New Jersey, Appellate Division, the underlying events were as follows:

> [Petitioner] was convicted after a trial by jury of first-degree robbery . . . . [One set of] crimes occurred on September 20, 2000, at a Fashion Bug located in Totowa [("Totowa Robbery")]. He was sentenced on February 20, 2004, to an extended term as a persistent offender, . . . to forty years imprisonment with

---

[1] Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the petitioners challenging the legality of their detention must marshal in one § 2254 application all arguments they have to collaterally attack that decision and file this one all-inclusive application within one year of the date on which the judgment of conviction becomes final by the conclusion of direct review or the expiration of the time for seeking such review. See 28 U.S.C. § 2244(d). Thus, Petitioner would be directed to inform the Court as to how he wants to proceed in this matter and which claims he wishes to litigate.

> twenty years of parole ineligibility. On direct appeal, we affirmed the conviction but remanded the matter for resentencing . . . . [Seemingly, no remand proceedings were conducted but, apparently, no appeal based on that lack of resentencing was taken. Petitioner's] direct appeal of his conviction on [the other set of crimes, which presented] severed counts of this [original] indictment [charging his with both first and second sets of crimes], relating to the robbery of a Fashion Bug located in Parsippany [("Parcippany Robery")], was calendared for review simultaneously with the appeal [with regard to the Totowa Robbery. Petitioner's] applications for certification were both denied on April 26, 2007. . . .

State v. Leach, 2011 WL 6183466, at *1 (N.J. Super. Ct. Dec. 10, 2011) (citations omitted).

Hence, it appears that Petitioner is serving two different prison terms (that might have been imposed either consecutively or concurrently) on the bases of two different convictions, one ensuing from his Totowa Robbery and another being a result of his Parsippany Robbery.[2]

Petitioner described the procedural history of his Totowa Robbery convictions as follows:

> On February 20, 2004 [P]etitioner was sentenced to . . . 40 years . . . . On December 28, 2006 the Superior Court of New Jersey, Appellate Division affirmed [P]etitioner's convictions . . . . On April 26, 2007 the Supreme Court of New Jersey denied a petition for certification . . . . On February 6, 2008 [P]etitioner filed a petition for post-conviction relief in the Superior Court of New Jersey, Law Division . . . . On April 24, 2009 the [Law Division held] oral argument on the petition. On May 18, 2009 by written opinion [The Law Division] denied the petition. On *December 14, 2001* the Superior Court of New Jersey, Appellate Division affirmed the denial of the petition . . . . On June 5, 2012 the Supreme Court of New Jersey denied a petition for certification . . . .

Docket Entry No. 2, at 5-6 (emphasis supplied).

It appears self-evident that Petitioner's reference to the December 14, 2001, is a mere typographic error, and he intended to refer to December 10, 2011, i.e., the date of entry of State

---

[2] Under Habeas Rule 2(e), Petitioner cannot challenge two different conviction in one habeas petition, see Muniz v. Zickefoose, 2011 U.S. Dist. LEXIS 115766, at *13 (D.N.J. Sept. 30, 2011), aff'd, 460 F. App'x 165 (3d Cir. 2012), and Petition appears to be well-cognizant of this limitation. See Docket Entry No. 2, at 7 ("The initial criminal incident . . . occurred on September 20, 2000 at the Fashion Bug in Totowa, while the second occurred on September 29, 2000 at a different Fashion Bug [and resulted in] convictions not attacked in this [P]etition").

2

v. Leach, 2011 WL 6183466. In that matter, Petitioner raised four points:

Point I: The order denying post–conviction relief should be reversed . . . because [Petitioner] made a prima facie showing that his . . . due process right to be protected against the introduction of unreliable identification evidence was violated.
Point II: Since [Petitioner] made a prima facie showing of ineffective assistance of trial counsel, the [Law Division] court misapplied its discretion in denying post–conviction relief without conducting a full evidentiary hearing.
Point III: The [Law Division's] ruling denying post–conviction relief violated [Petitioner's] right to effective assistance of counsel . . . .
Point IV: [Petitioner] reasserts all other issues raised in [Petitioner's] pro se petition for post–conviction relief and in PCR counsel's brief . . . .

Id. at *2 (noting that the same points were raised before the Law Division).

Here, however, Petitioner raised the following four Grounds:

Ground I: Counsel's failure to investigate critical aspects of the State's case violated the rights to confrontation, fair trial, effective counsel and due process guaranteed by the Sixth and Fourteenth Amendments.
Ground II: Petition for post-conviction relief denial violated the Fourteenth Amendment since an unreliable identification was used violating due process.
Ground III: Denial of an evidentiary hearing violated the Fourteenth Amendment.
Ground IV: Affirming of the denial of the petition violated the Fourteenth Amendment.

Docket Entry No. 2, at 12-25.

While the Court detects a certain correlation between Petitioner's Ground II and his Point I, and between his Ground III and Point II, the correlation between Petitioner's instant Grounds I and IV and the points raised before the state courts is not immediately apparent to this Court.[3]

---

[3] For instance, in the state courts, Petitioner challenged: (a) the detective's failure to preserve a post-it with the phone number of an anonymous caller and the records of his aborted attempt to create a composite sketch; (b) his counsel's election to omit obtaining an outdated police photograph not presented to any witness who testified at trial; (c) his counsel's election to attack the validity of the information provided by an anonymous caller (who never testified at trial) during a pre-trial hearing, without attempting to obtain that individual's name. See Leach,
(continued...)

3

Thus, in conjunction of advising Petitioner of his Mason rights, the Court finds it warranted to detail to Petitioner the exhaustion requirement and related concepts.

A state prisoner applying for a writ of habeas corpus in federal court must first "exhaust[] the remedies available in the courts of the State," unless "there is an absence of available State corrective process[] or . . . circumstances exist that render such process ineffective." 28 U.S.C. § 2254(b)(1); Rose v. Lundy, 455 U.S. 509, 515 (1982); Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993); Duarte v. Hershberger, 947 F. Supp. 146 (D.N.J. 1996); see also Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997), cert. denied, 532 U.S. 919 (2001) (finding that "Supreme Court precedent and the AEDPA mandate that prior to determining the merits of [a] petition, [a court] must consider whether [petitioner] is required to present [his or her] unexhausted claims to the [state's] courts"). The courts of a state must be afforded an "opportunity to pass upon and correct alleged violations of its prisoners' federal rights."[4]

---

[3](...continued)
2011 WL 6183466. Here, however, Petitioner asserts that the detective destroyed a certain unidentified *exculpatory* evidence, that his counsel failed to subpoena some unspecified witness who would have testified to the detective's perjury (Petitioner did not provide any information about the witness and did not include the witness' affidavit as to what this witness would have testified to), etc. See Docket Entry No. 2. To make the matters even more confusing, Petitioner's brief detailed very few actual facts but extensively discussed abstract hypotheticals and legal precedent seemingly having no correlation to his claims. See id. The Court, therefore, takes this opportunity to stress to Petitioner that, being a pro se litigant, Petitioner must merely state his legal claims and supporting factual predicate. He need not discuss law. In the event his claims warrant an answer, the Court would direct Respondents to answer Petitioner's challenges, and Petitioner would be availed to an opportunity to traverse by discussing his legal perceptions.

[4] Exhaustion is not a jurisdictional requirement; rather, it is designed to allow state courts the first opportunity to pass upon federal constitutional claims, in furtherance of the policies of comity and federalism. See Granberry v. Greer, 481 U.S. 129 (1987); Rose, 455 U.S. at 516-18; Evans, 959 F.2d at 1230; O'Halloran v. Ryan, 835 F.2d 506, 509 (3d Cir. 1987). Exhaustion also has the practical effect of permitting development of a complete factual record in state court, to
(continued...)

Wilwording v. Swenson, 404 U.S. 249, 250 (1971); Picard v. Connor, 404 U.S. 270, 275 (1971); Evans v. Court of Common Pleas, Del. Cty., Pa., 959 F.2d 1227, 1230 (3d Cir. 1992), cert. dismissed, 506 U.S. 1089 (1993).

A petitioner must exhaust state remedies by presenting his federal constitutional claims to each level of the state courts empowered to hear those claims, either on direct appeal or in post-conviction proceedings.[5] See Ross v. Petsock, 868 F.2d 639 (3d Cir. 1989); see also O'Sullivan v. Boerckel, 526 U.S. 838 (1999) ("requiring state prisoners [in order to fully exhaust their claims] to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"); 28 U.S.C. § 2254(c) "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented"). This means that the claims heard by the state courts must present a "substantial equivalent" of the claims asserted in the federal habeas petition. See Picard, 404 U.S. at 275. Reliance on the same constitutional provision is not sufficient: *the legal theory and factual predicate must also be the same with regard to each particular claim.*[6] See id. at 277.

---

[4](...continued)
aid the federal courts in their review. See Rose, 455 U.S. at 519; Castille v. Peoples, 489 U.S. 346, 349 (1989).

[5] Only if a petitioner's federal claims have been fairly presented to each level of the state court, including the state's highest court, the exhaustion requirement is satisfied. See Picard, 404 U.S. at 275; Castille, 489 U.S. at 350. The petitioner generally bears the burden to prove all facts establishing exhaustion. See Toulson, 987 F.2d at 987.

[6] For instance, if – during his/her state litigations – a petitioner asserts two different factual predicates (i.e., two different sets of factual events) and two different federal claims, with each claim being correlated to its particular factual predicate, the petitioner cannot later "cris-
(continued...)

The rationale of the "substantial equivalent" requirement is self-evident in light of the standard of review applicable to federal habeas actions: habeas relief focuses on whether the state court's adjudication of the petitioner claim "resulted . . . or involved an unreasonable application of . . . Supreme Court precedent." 28 U.S.C. § 2254(d). If the legal theory and/or the factual predicate of each claim presented to the state courts differed from the legal theory and factual predicate of the claim presented for federal habeas review, the federal court has no basis to conclude that the state courts unreasonably applied the governing Supreme Court precedent, because each Supreme Court precedent (and any legal precedent) is composed of a particular factual predicate and a particular rule of law, and so this precedent can only be applied to substantially same set of circumstances and legal challenges.

Where any available procedure remains, even if only theoretically, the petitioner has not exhausted the available remedies. See 28 U.S.C. § 2254(c). Federal courts have consistently adhered to the exhaustion doctrine "for it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." Picard, 404 U.S. at 275 (citations and internal quotation marks omitted). Correspondingly, district courts should dismiss petitions containing unexhausted claims, even if it is not likely that a state court will consider the claims on the

---

[6](...continued)
cross" these factual predicates and claims for the purposes of his federal habeas proceedings. To illustrate, if – during his/her state proceedings – a petitioner asserts that: (a) his/her counsel provided ineffective assistance by failing to object to certain remarks made by the prosecutor, and (b) that his/her trial court violated the petitioner's rights by denying him/her an opportunity to cross-examine a certain witness, the petitioner cannot later "repackage" or "cross-match" these challenges during his federal habeas proceedings into claims asserting that: (a) his counsel was ineffective by failing to seek an opportunity to cross-examine that witness; and (b) the trial court violated the petitioner's rights by failing to instruct the jurors to ignore the prosecutor's remarks.

merits. See Rose, 455 U.S. at 522; Banks v. Horn, 126 F.3d 206, 212-14 (3d Cir. 1997); see also Toulson, 987 F.2d at 989 ("Because no [New Jersey] court has concluded that petitioner is procedurally barred from raising his unexhausted claims and state law does not clearly require a finding of default, we hold that the district court should have dismissed the petition without prejudice for failure to exhaust state remedies"). Analogously, if a petition contains a mix of duly exhausted and unexhausted claim (such petitions are referred to as "mixed" petitions), the petition is also subject to dismissal.

> Faced with [a] "mixed" petition, the District Court ha[s] four options: [(1)] dismiss the petition without prejudice under Rose [v. Lundy, 455 U.S. 509, unless such dismissal would mean that the petitioner's amended petition would necessarily be bound for dismissal as untimely, see Urcinoli, 546 F. 3d 269], [(2)] "stay and abey" under Rhines [v. Weber, 544 U.S. 269 (2005)], [(3)] allow [the petitioner] to delete his unexhausted claims, see Rhines, 544 U.S. at 278, or, [(4)] if all of his claims are meritless, deny the petition under § 2254(b)(2) (allowing denial of a petition on the merits "notwithstanding the failure of the applicant to exhaust . . .").

Mahoney v. Bostel, 2010 U.S. App. LEXIS 3916, at *5-6 (3d Cir. N.J. Feb. 24, 2010) (footnote omitted). Here, the Petition appears to be a "mixed" application.[7]

In light of the foregoing, Petitioner will be directed respond to this Court's Mason order by submitting (a) a written statement clarifying whether he wishes to seek a stay (and the bases for his stay application, if such is advanced); or, in the event no stay is sought, (b) an amended pleading detailing the exact legal claims he wishes to litigate in this matter and the particular factual predicates supporting these claims (and expressly correlating these sets of legal clams and

---

[7] Petitioner may, if he so desires, withdraw his unexhausted claims or, if he so wishes, seek "stay and abeyance" of his Petition *by showing that his unexhausted claims present at least colorable challenges*, which Petitioner would duly attempt to exhaust before all three levels of the state courts while his instant Petition is stayed. See Rhines v. Weber, 544 U.S. 269 (2005).

factual predicates to substantially equivalent sets of legal claims and factual predicates he raised before all levels of the state courts).[8]

An appropriate Order accompanies this Opinion.

_____
**Dickinson R. Debevoise**
**United States District Judge**

Dated: Feb. 19, 2013

---

[8] While the Court is mindful of Petitioner's emotions, the Court urges Petitioner to state his claims and factual predicates as presented to the state courts and not infuse unwarranted qualifiers into Petitioner's assertions. For instance, in the event Petitioner refers to a certain piece of evidence as "exculpatory," Petitioner's state assertions had to be substantially equivalent and, thus, had to detail why/how this evidence was exculpatory. Analogously, in the event Petitioner refers to a certain potential witness testimony as "exculpatory," Petitioner's state assertions had to be substantially equivalent and had to detail why this witness was available to be called, how the existence of that witness was known or knowable to counsel and, in addition, include an affidavit from that witness averring as to what that witness would have testified to. In other words, Petitioner's injection of unwarranted qualifiers renders his Petition *weaker* rather than more warranting relief, and Petitioner will never be penalized by federal courts for stating his challenges in simple English. All pleadings executed by pro se litigants are construed with a measure of tolerance, see Erickson v. Pardus, 551 U.S. 89 (2007), Haines v. Kerner, 404 U.S. 519, 520 (1972), and inartful "dry facts stated in a clear and concise pleading speak volumes for the purposes of any legal proceeding, while eloquent 'nothings' are invariably dismissed as pure rhetoric." Clauso v. Glover, 2012 U.S. Dist. LEXIS 139205, at *21 (D.N.J. Sept. 26, 2012).